UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOSES DUNCAN,

                        Plaintiff,            Case # 18-CV-369-FPG

v.                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

**INTRODUCTION**

Plaintiff Moses Duncan brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 16. For the reasons that follow, the Commissioner's motion is DENIED, Duncan's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

**BACKGROUND**

In February 2014, Duncan applied for Disability Insurance Benefits ("DIB") under Title II of the Act and for SSI with the Social Security Administration (the "SSA"). Tr.[1] 11, 316–23. He initially alleged disability beginning in April 2011 due to back pain and numbness, standing and sitting limitations, a right knee injury, anxiety, and panic attacks. Tr. 316, 331–32, 360. In September 2016, Duncan and a vocational expert appeared at a hearing before Administrative Law

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

Judge Bryce Baird ("the ALJ"). Tr. 11, 23. At the hearing, Duncan alleged that his disability began in August 2015, which in effect (based on his last insured date) abandoned his claim for DIB. Tr. 11, 203. On March 15, 2017, the ALJ issued a decision finding that Duncan was not disabled. Tr. 11–23. On January 24, 2018, the Appeals Council denied Duncan's request for review. Tr. 1–4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's "function to determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act,

meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Duncan's claim for benefits under the process described above. At step one, the ALJ found that Duncan has not engaged in any substantial gainful activity since the amended onset date. Tr. 13. At step two, the ALJ found that Duncan has several severe impairments: a torn meniscus in his right knee after several surgical interventions, depression, anxiety, herniated thoracic discs, and cervical disc herniation with stenosis and obesity. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Duncan had the RFC to perform sedentary work with additional limitations. Tr. 16–21. Specifically, the ALJ found that Duncan needed the option to stand or walk for up to five minutes after thirty minutes of sitting and to sit for up to fifteen minutes after twenty minutes of standing or walking. Tr. 16–21. The ALJ further found that Duncan could not: use foot controls with his right foot; climb ramps or stairs more than occasionally; use ladders, ropes, or scaffolds; crawl, stoop, kneel, or crouch; be exposed to excessive vibration or hazards such as unprotected heights or moving machinery; perform more than simple, routine tasks; perform production rate or pace work; or perform team-work, such as on a production line. *Id.* At steps four and five, the ALJ found that Duncan could not perform his past relevant work but that there were jobs that existed in significant numbers in the national economy that he could perform. Tr. 21–23. The ALJ therefore found that Duncan had not been disabled from August 28, 2015 through the date of the ALJ's decision. Tr. 23.

## II. Analysis

Duncan challenges the ALJ's RFC, arguing that it was erroneous because it was not supported by competent medical opinion. ECF No. 12-1 at 12–16. The Court agrees.

An RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015). In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgment[s] about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (alteration in *Agostino*) (quotation omitted). *Compare Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (noting that an ALJ can make reasonable inferences from a claimant's reports of daily activities), *with Agostino*, 2020 WL 95421, at *3 ("It is simply not a common-sense inference that [the claimant's] lumbar and knee problems, in conjunction with her obesity, would render her able to stand for 45 minutes at a time so long as she could sit for one to two minutes. That is a more complex medical determination that requires a level of expertise that the ALJ does not have.").

In this case, the ALJ explicitly weighed five opinions and gave each little weight. Tr. 20–21. He concluded that more restrictions were warranted than indicated by consultative examiner Dr. Schwab. Tr. 20. Dr. Schwab found that Duncan had a mild restriction in kneeling on his right

5

knee. Tr. 595–98. The ALJ next determined that physician assistant ("PA") Kelly's opinion that Duncan was "taken out of work" due to "spine issues" was vague and that she was not an acceptable source. Tr. 20–21, 722. The ALJ noted that the opinion of PA Lyons was entitled to little weight because she only treated Duncan for three months and she did not provide a function-by-function assessment. Tr. 21, 832–35. Ms. Lyons checked a box on a "Spine Residual Functional Capacity Questionnaire" indicating that Duncan would be absent from work because of his impairments "[m]ore than four days per month" but cryptically wrote "[b]ut unknown" above the typed text. Tr. 832, 835.

Consultative examiner Dr. Santarpia opined that Duncan's psychiatric problems "do not appear to be significant enough to interfere with [his] ability to function on a daily basis." Tr. 590–93. The ALJ rejected her opinion because it was based on a single examination and inconsistent with Duncan's testimony. Tr. 21. Finally, the ALJ rejected state agency review physician Dr. Tzetzo's opinion that Duncan's "mental impairment is non-severe" because Dr. Tzetzo did not examine Duncan and Duncan amended his alleged onset date. Tr. 21, 249–51.

Because he did not credit any opinion evidence, the ALJ must have made inferences from bare medical findings, specifically "[t]reatment notes." Tr. 21. For example, with respect to Duncan's mental limitations, the ALJ found that Duncan is limited to simple, routine tasks with no production rate or pace work and no team work, such as on a production line. Tr. 16. The ALJ never specifically explained how he derived this highly specific limitation. Tr. 16–21. Instead, the ALJ simply notes that Duncan was "seen from May 22, 2014 to November 24, 2014 for depression and anxiety," that he was working at the time, and that he stopped treatment. Tr. 21. It is not clear to the Court how the ALJ, as a layperson, could translate medical findings of anxiety and depression into highly specific restrictions without the aide of opinion evidence. *Cutre v. Berryhill*,

6

No. 17-CV-135, 2018 WL 3968385, at *3–4 (W.D.N.Y. Aug. 20, 2018) (quotation omitted) (holding that it was error for ALJ to formulate RFC after rejecting the only medical opinions regarding claimant's mental ability to work).

Similarly, the ALJ never ties any of his physical RFC findings to specific evidence in the record. Instead, the ALJ's discussion of Duncan's RFC consists entirely of rote regurgitation of evidence followed by the conclusory statement that the RFC "assessment is supported by the objective medical evidence contained in the record." Tr. 16–21. The dearth of analysis frustrates any meaningful review of that conclusion. *See, e.g.*, *Paul v. Colvin*, No. 15-CV-310, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016) ("[T]he ALJ must simply explain the link between his RFC assessment and the record evidence supporting that assessment.").

The Commissioner now argues that the ALJ's highly specific RFC formulation is supported by the treatment providers' adherence to conservative treatment and Dr. Schawb's finding that Duncan had "[m]ild restriction to kneeling on his right knee." ECF No. 16 at 12–13; Tr. 20, 598. Setting aside the apparent conflict between these arguments and the ALJ's actual findings, "[t]he Court may not affirm the ALJ's decision based on the Commissioner's post hoc rationalization." *Agostino*, 2020 WL 95421, at *4.

The Commissioner further argues that the ALJ "was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." ECF No. 16 at 13 (quoting *Matta*, 508 F. App'x at 56). In *Matta*, the ALJ "took account" of multiple medical opinions and other evidence in the record. 508 F. App'x at 56. Here, the ALJ has given little weight to all opinion evidence. Tr. 20–21. While the ALJ is certainly permitted to resolve evidentiary conflicts, *see Richardson v. Perales*, 402 U.S. 389, 399 (1971), the ALJ is prohibited from rejecting all opinion evidence and "playing doctor." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286,

292 (W.D.N.Y. 2018) (quotation omitted); *Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) (holding that ALJ giving "little weight" to "the only physical medical opinion in the record created an evidentiary gap that require[d] remand").

In short, in formulating Duncan's RFC, the ALJ failed to rely on any medical opinion that could bridge the gap between clinical findings and specific functional limitations. It is clearly established that "the ALJ may not interpret raw medical data in functional terms." *Johnson*, 351 F. Supp. 3d at 293 (quotation omitted). That is what the ALJ did here. Accordingly, remand is warranted for further development of the record. *See York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 263 (W.D.N.Y. 2019).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 16, is DENIED and Duncan's Motion for Judgment on the Pleadings, ECF No. 12, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 9, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court